No. 88-298

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

GREGORY JOHN JELLISON,

Defendant and Appellant.


APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. Dirk Beccari, Missoula, Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Helena, Montana
Kathy Seeley, Asst. Atty. General, Helena
Robert Deschamps, III, County Attorney; Fred Van
Valkenburg, Deputy County Atty., Missoula, Montana


Submitted on Briefs: Dec. 22, 1988

Decided: February 28, 1989

Filed: '89 FEB 28 AM 10 49
ED SMITH CLERK
MONTANA SUPREME COURT
FILED

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal from a judgment of the Fourth Judicial District, Missoula County. Appellant Jellison was convicted by a jury of four felony counts of robbery, § 45-5-401, MCA. He was sentenced to 40 years on each count plus 10 years on each count for use of a weapon. He was also designated a dangerous offender. Jellison contends that the District Court erred by admitting certain evidence. This Court affirms the District Court.

The issue is whether the District Court erred when it denied the defendant's motion to suppress as evidence the tennis shoes the defendant was wearing when arrested for robbery and the comparison of the tennis shoes with a print left at the scene of the crime.

On June 2, 1987, Missoula County sheriff deputies responded to a radio report of an armed robbery at the Orange Street Inn. They were parked within sight of the Inn at the time. Within one minute the deputies observed a large white and brown automobile turn left onto Orange Street heading for the I-90 freeway entrance. This car matched the description of the automobile used in a previous armed robbery. The description of the suspect was of a white male in his twenties, brown hair, stocky build around 5'9" tall. The suspect was reportedly wearing a plaid shirt, blue jeans and white tennis shoes.

The deputies stopped the car and arrested the defendant, Jellison and the driver of the car. The deputies observed a gun in the front seat partially concealed in a K-Mart bag. They also observed clothing in the car, including a plaid shirt. Jellison matched the description of the reported

robber. Jellison was taken to jail where his clothing, including his tennis shoes, were placed in a property locker.

A detective investigating the crime scene soon after the crime discovered a shoe print on the counter of the motel. He went to the jail where he obtained Jellison's shoes from the property locker. He returned to the motel where he compared the shoes to the print found on the counter. The shoes were admitted into evidence at trial as was evidence of the print comparison. Other evidence included the testimony of the victim of the Orange Street Inn robbery that Jellison was the man who robbed her.

Jellison contends that taking his tennis shoes from the property locker after his lawful arrest violated his Fourth Amendment right to be free from unreasonable searches and seizures and his right to privacy guaranteed by Article II, § 10 of the Montana Constitution. We disagree.

First, the seizure of Jellison's tennis shoes was valid pursuant to § 46-5-101(1), MCA, which authorizes a search "of a person, object, or place may be made and instruments, articles, or things may be seized in accordance with the provisions of this chapter when the search is made . . . as an incident to a lawful arrest." (Emphasis added.) When a lawful arrest is made, police may reasonably search and seize anything within such persons immediate presence "which may have been used in the commission of [the crime] or which may constitute evidence of the offense." (Emphasis added.) Section 46-5-102(4), MCA. The suspect was reported to be wearing white tennis shoes at the time of the crime and Jellison was wearing white tennis shoes when he was stopped within 90 seconds of the dispatch over the radio reporting the crime to police on patrol. When Jellison was arrested and brought to the jail and his clothing and tennis shoes were taken, they were taken incident to a lawful arrest and

- 3 -

their evidentiary value had already been established by the victim who described the robber. Jellison's tennis shoes clearly constituted evidence of the crime even before the detective discovered a shoe print at the crime scene.

The Fourth Amendment proscribes unreasonable searches, not reasonable ones. "It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." State v. Ulrich (1980), 187 Mont. 347, 351, 609 P.2d 1218, 1220 (quoting United States v. Robinson (1973), 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427).

With regard to the Montana Constitution's Right of Privacy Clause, Art. II, § 10, the defendant, at the time of his lawful arrest had less or no expectation of privacy with respect to his personal property lawfully seized by the police. A Michigan case, People v. Rivard (1975), 230 N.W.2d 6, articulates this rule:

> Once the [object] had been exposed to police view under unobjectionable circumstances and lawfully taken by the police for safekeeping, any expectation of privacy with respect to that item had at least partially dissipated so that no reasonable expectation of privacy was breached by [the police] taking a "second look."

Rivard, 230 N.W.2d at 8.

The United States Supreme Court held in United States v. Edwards (1974), 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771, that police may, without first obtaining a warrant, seize items of evidence incident to a lawful arrest.

The facts surrounding Edwards are quite similar to the case at bar. Edwards was arrested for attempting to break into a post office. Shortly after he was incarcerated, it was discovered during investigation of the crime scene that

the attempted break-in had been made through a wooden window which had been pried with a crow bar leaving paint chips on the sill. Police thought it probable that paint chips would be on the clothing of the perpetrator. Examination of Edwards' clothing revealed paint chips which matched those found on the window sill. On appeal, the Sixth Circuit Court of Appeals reversed the admission of the wood chips into evidence because a warrant was required "after the administrative process and the mechanics of the arrest have come to a halt." United States v. Edwards (6th Cir. 1973), 474 F.2d 1206, 1211.

The Supreme Court disagreed:

> With or without probable cause, the authorities were entitled at that point [of arrest] not only to search Edwards' clothing but also to take it from him and keep it in official custody. There was testimony that this was the standard practice in this city. The police were also entitled to take from Edwards any evidence of the crime within his immediate possession, including his clothing. And the Court of Appeals acknowledged that contemporaneously with or shortly after the time Edwards went to his cell, the police had probable cause to believe that the articles of clothing he wore were themselves material evidence of the crime for which he had been arrested. 474 F.2d at 1210.. . . Once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other. This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the "property room" of the jail and at a later time searched and taken for use at the subsequent criminal trial.

Edwards, 415 U.S. at 806-07.

In the present case, police thought it probable that the print found on the counter could be matched with the shoe worn by the defendant. Comparison of the print to the shoe proved to be a match. The defendant had been lawfully taken into custody and the police followed their standard practice of taking detainees' clothing. The police were also entitled to take from the defendant any evidence of the crime within his immediate possession, including his clothes. There was probable cause to believe the defendant's clothing would provide material evidence of the crime for which he was arrested.

This Court concludes that the District Court did not err by denying Jellison's motion to suppress the tennis shoes as evidence and the evidence of comparison to the print. The shoes were lawfully seized incident to the lawful arrest of the defendant.

Affirmed.

_John C. Sheehy_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_L. C. Gulbrandson_

_R. C. McDonough_
Justices

- 6 -